**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Anthony ROBINSON,
Defendant–Appellant.**

**No. 87–5880.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 24, 1989.

Decided Oct. 2, 1989.

Suzanne Philbrick (argued), Oak Lawn, Ill., for defendant-appellant.

Thomas Self (argued), Asst. U.S. Atty., Lexington, Ky., for plaintiff-appellee.

Before MARTIN and RYAN, Circuit Judges, and POTTER, District Judge.*

JOHN W. POTTER, District Judge.

Defendant-appellant, John Anthony Robinson, appeals his criminal conviction for intimidating and threatening a witness with intent to influence the witness' testimony in violation of 18 U.S.C. § 1512. Appellant raises two issues for review. First, appellant argues that the district court committed prejudicial error when it refused to give an entrapment instruction to the jury on Count II of the indictment unless appellant admitted the elements of the offense alleged in Count II. Appellant contends that the court's instructions as to Count II therefore deprived him of his Fifth Amendment right to be presumed innocent and his Sixth Amendment right to have his guilt or innocence decided by a jury since it effectively directed a partial verdict against defendant-appellant on the two identical elements of the offenses alleged in Counts I and II. Although the jury was unable to return a verdict on Count II, it convicted appellant of the offense charged in Count I. Second, appellant contends that his right, under the Speedy Trial Act, to be indicted within 30 days of his arrest was violated and that the district court erred in denying his motion to dismiss on that ground. We find that defendant's first issue is well taken, and for the reasons set forth below, we reverse the judgment of the district court.

On October 9, 1986, a criminal complaint was filed in United States District Court, Eastern District of Kentucky, charging defendant-appellant with violations of Sections 1512 (threatening or intimidating a witness) and 201 (bribing a witness) of Title 18, United States Code. Magistrate James F. Cook issued a warrant for defendant-appellant's arrest on that same date. On the following day, October 10, 1986, Robinson was arrested on the warrant by the Federal Bureau of Investigation in Louisville, Kentucky. Robinson was taken before Magistrate George J. Long, Western District of

Kentucky, for his initial appearance on the complaint. In an order dated October 14, 1986 Magistrate Long ordered that Robinson be removed to the Eastern District of Kentucky. Also on October 14, 1986, Magistrate Long ordered Robinson temporarily detained without bail until October 24, 1986. On the same day, October 14, 1986, a writ of habeas corpus ad prosequendum was issued by Magistrate Robert Steinberg commanding the United States Marshal to produce Robinson before The Honorable S. Arthur Spiegel on October 15, 1986 for trial in United States District Court for the Southern District of Ohio in the case of *United States v. John Anthony Robinson,* CR-1-86-0074.

Robinson was tried in the Southern District of Ohio on October 16 and 17, 1986. On October 17, 1986, the jury convicted Robinson. Pending sentencing Robinson remained in the custody of the United States Marshal for the Southern District of Ohio but was returned to the Boone County Detention Center in the Eastern District of Kentucky.

He was sentenced on January 16, 1987 in the Southern District of Ohio and returned to Boone County, Kentucky. On February 4, 1987, an indictment was returned in the Eastern District of Kentucky charging defendant with two separate violations of federal criminal laws. Count I charged that on or about September 30, 1986, Robinson knowingly used intimidation and threatened David A. Geoghegan and attempted to do so with intent to influence his testimony in the criminal case against Robinson in the Southern District of Ohio. Count II charged that, on or about October 8, 1986, Robinson offered and gave $500.00 to David Geoghegan with the intent to influence his testimony in the case against Robinson in the Southern District of Ohio.

On February 4, 1987 a writ of habeas corpus ad prosequendum was issued for Robinson's appearance at a February 5, 1987 arraignment on the indictment. On

---

* The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

February 20, 1987 Robinson moved to have the case dismissed on the ground that the government had violated the Speedy Trial Act by failing to indict defendant within 30 days of his arrest as required by 18 U.S.C. § 3161(b). The motion was denied.

At trial, Robinson requested a jury instruction on entrapment on the second count of the indictment. However, the district court, relying on previous precedents of this court,[1] declined to give the instruction unless Robinson admitted the elements of the offense alleged in Count II. Robinson eventually conceded the elements of Count II of the indictment solely for the purpose of obtaining the court's instruction to the jury on entrapment. On July 16, 1987 Robinson was convicted by the jury on Count I of the indictment and sentenced to 10 years imprisonment to be served consecutive to his prior federal sentence. However, the jury was unable to return a verdict as to Count II of the indictment and Count II was eventually dismissed by the government. Subsequently, the Supreme Court decided *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). The *Mathews* court held that a criminal defendant cannot be compelled to admit the elements of the offense in question in order to receive a jury instruction on entrapment where there is sufficient evidence from which a reasonable jury could find entrapment. Robinson contends that, although Count II of the indictment was eventually dismissed, the trial court's instruction that he conceded the elements of Count II amounted to a partial directed verdict against him on Count I. It was not contended in the lower court by the defendant that the court's holding and instructions on Count II would taint Count I. However, it has not been argued in this Court that error as to Count I was not preserved for review. See 9 Fed.Proc., L.Ed. § 22:1203 (1984).

█ The first issue with which we are confronted is whether the district court committed prejudicial error as to Count I of the indictment by requiring Robinson to admit the elements of the offense alleged in Count II in order to receive a jury instruction on the defense of entrapment as to that count. Robinson contends that the district court in effect granted a partial directed verdict in favor of the government since two of the elements contained in Count I are identical to those he was required to admit in order to receive an entrapment instruction on Count II. Since this case was on direct appeal when *Mathews* was decided, Robinson is clearly entitled to the benefit of the *Mathews* rule. See *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (holding that even where a new rule of criminal procedure represents a "clear break with past precedent" the new rule must be applied to all cases pending on direct review). Thus, without question it was error to require Robinson to admit the elements of Count II in exchange for an entrapment instruction. However, since the jury was unable to return a verdict on Count II, the focus of our inquiry is whether that error spilled over to Count I, and, if it did, was it harmless.

With respect to Count I of the indictment the trial court instructed the jury that Robinson could be found guilty only if the government established each of the following elements by proof beyond a reasonable doubt: (1) that the person described in the indictment was scheduled to be a witness in the case of United States v. Robinson; (2) that the defendant used intimidation against or threatened such person as charged; and (3) that the defendant did so knowingly and willfully with the intent to influence the testimony of the witness. Tr. Vol. 7, p. 14. As to Count II of the indictment the trial court instructed the jury that the defendant

relies upon a defense of entrapment. In doing so, he conceded or admits or stipulates that he committed the offense that is alleged in Count Two, thus, he admits that David Geoghegan was to be a witness under oath at the trial of United

[1]. *United States v. Whitley,* 734 F.2d 1129, 1139 (6th Cir.1984). *Whitley* was the prevailing law in the Sixth Circuit at the time of defendant-appellant's trial.

States versus Robinson, number 1–86–0074, in the Southern District of Ohio. Second, that the defendant corruptly offered and gave something of value to Geoghegan. And, third, he admits that he acted with intent to influence Geoghegan's testimony. Although admitting these elements of the offense, the defendant contends, however, that he is not guilty of the offense that is charged in Count Two of the indictment because of entrapment.

Tr. Vol. 7, p. 17. The trial court also instructed the jury as follows regarding defendant's plea of not guilty and the separate nature of each count:

> This plea puts in issue each of the essential elements of the offense that is described in Count One, and puts in issue the entrapment issue as to Count Two. It imposes upon the government the burden of meeting its burden as to each count by proof beyond a reasonable doubt. The indictment in question, as we've referred to several times, has two counts. A separate crime or offense is charged in each count. Each charge and the evidence pertaining to it must be considered separately. The fact that you may find an accused guilty or not guilty as to one of the offenses charged should not control your verdict as to the other offense that is charged.

Tr. Vol. 7, pp. 12–13.

Defendant-appellant contends, as previously stated, that the effect of the instruction on Count II was to direct a verdict against him on two elements of Count I. These elements are (1) that Robinson knew Geoghegan was to be a witness against him in the other federal case and (2) that Robinson acted with the intent to influence Geoghegan's testimony. The government contends, however, that each count related to separate factual incidents separated in time by more than a week, thus rendering irrelevant any similarity in the elements of each offense.

It is well established that a plea of not guilty places all issues in dispute in a criminal case, including the "most patent truths." *United States v. Mentz*, 840 F.2d 315, 320 (6th Cir.1988); *United States v. Goetz*, 746 F.2d 705, 708 (11th Cir.1984) (quoting *Roe v. United States*, 287 F.2d 435, 440 (5th Cir.)), *cert. denied* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961). In *Mentz*, a bank robbery case, this court held that the trial court erred when it instructed the jury that the bank in question was federally insured since the bank's federally insured status was an essential element of the crime which defendant had denied by pleading not guilty. *Mentz*, 840 F.2d at 320. Such an instruction, the *Mentz* court held was an invasion of the jury's province by the judge. *Id.* at 319. Furthermore, the *Mentz* court concluded that a trial court commits error of a constitutional magnitude when it "instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence." *Id.* at 320. The *Mentz* court concluded that the court's instruction involving a constitutional error in that case was not "harmless beyond a reasonable doubt."[2] *Id.* at 324. Our holding in *Mentz* causes us to scrutinize carefully a trial court's instructions to a jury which may result in a partial directed verdict.

The Third Circuit has recently addressed, in *United States v. Berkery*, 865 F.2d 587 (3rd Cir.1989), nearly precisely the issue with which we are confronted today. In *Berkery* the defendant was charged with Count I, conspiracy to distribute P2P, Counts II–XI, distribution and possession of P2P, and Counts XII–XV, distribution of methamphetamines. *Id.* The defendant was required by the trial court, in a pre-*Mathews* trial to admit the elements of Counts I and XV in order to receive an entrapment instruction as to those counts. The *Berkery* court reviewed the allegations of error under the plain error doctrine. See Fed.R.Crim.P. 52(b). The court concluded that, despite a cautionary instruc-

**2.** See *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (holding

that in order to be considered harmless error

tion from the trial court,[3] the other counts were so closely intertwined with those in which the defendant was required to admit the elements that there was error and it could not be harmless even as to the nonentrapment counts. *Id.* at 591. Our analysis is benefited greatly by the *Berkery* decision. First, we find error as to Count I. Second, we are not persuaded that the offenses alleged in Counts I and II of the indictment in this case were so remote in time as to render the error associated with the court's instruction harmless. Our inquiry must be whether the error which occurred was "harmless beyond a reasonable doubt." See *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. In spite of the trial judge's cautionary instruction, there is a clear danger that, based on Robinson's admissions regarding Count II, the jury may have seized upon those admissions to convict him of Count I. The error regarding the instructions was such as to cast doubt upon the fundamental fairness of Robinson's trial. We are not prepared to say that the error was harmless beyond a reasonable doubt, particularly in light of our prior decision in *Mentz* and the decision of the court in *Berkery*. Accordingly, we reverse defendant-appellant's conviction and remand the case for a new trial on Count I of the indictment.

■ Our ruling on the first issue requiring a new trial does not moot defendant's second issue. If this Court would hold the second issue is well taken, then the matter would be remanded to the trial court for determination as to whether or not the indictment as to Count I should be dismissed with or without prejudice after application of the statutory criteria.

The second issue, which is presented pro se, involves the application of the Speedy Trial Act. Actually, the title may be a misnomer since the Act also applies to speedy indictments, and that is the substance of this issue. See *United States v. Samples*, 713 F.2d 298 (7th Cir.1983).

The pertinent portions of the Act are as follows:

(b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

. . . . .

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

. . . . .

(D) delay resulting from trial with respect to other charges against the defendant;

18 U.S.C. § 3161.

(a)(1) If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the ad-

---

constitutional error must be harmless beyond a reasonable doubt).

**3.** The court stated, "[b]ut I want to make clear that on counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13 and

14, Mr. Berkery isn't admitting any of the elements and the government has the burden of proving all the elements of those offenses."

ministration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(1).

The history of the Act is found in A. Partridge, *Legislative History of the Speedy Trial Act of 1974* (1980), and has been commented on in several cases. The purpose is "to quantify and make effective the Sixth Amendment right to a speedy trial." *Henderson v. United States,* 476 U.S. 321, 333, 106 S.Ct. 1871, 1878, 90 L.Ed.2d 299 (1986) (White, J., dissenting); *United States v. Montoya,* 827 F.2d 143 (7th Cir.1987); *United States v. Pollock,* 726 F.2d 1456 (9th Cir.1984).

A district judge's interpretation of the Act calls for a de novo review by an appellate court. *Montoya,* 827 F.2d 143; *United States v. Heldt,* 745 F.2d 1275 (9th Cir. 1984). Defendant's motion, having been made prior to trial, was timely. See *Pollock,* 726 F.2d 1456.

Cases reviewing the Act concerning the period after indictment generally predominate. See *United States v. Richmond,* 735 F.2d 208 (6th Cir.1984). But the issue of speedy indictment has been a more infrequent subject of judicial review. *Pollock,* 726 F.2d 1456; *United States v. Shear,* 825 F.2d 783 (4th Cir.1987); *United States v. Antonio,* 705 F.2d 1483 (9th Cir.1983); *United States v. Ford,* 532 F.Supp. 352 (D.C.Dist.1981). The exclusions set forth at 18 U.S.C. § 3161(h)(1)(D) apply to both.

The issue here is whether or not the period the defendant was held pending his sentencing was another proceeding under § 3161(h)(1)(D) and whether there was any causal relationship between the delay in indictment and the other proceeding inasmuch as conceivably the defendant could have been indicted at least after his trial and prior to his sentencing in the other case, since he was held in Boone County, Kentucky. We find for the government and against the defendant on this issue.

The statute is to receive a broad interpretation as to what is a "proceeding." *Henderson,* 476 U.S. 321, 106 S.Ct. 1871 (1986); *Shear,* 825 F.2d 783. The listed exceptions do not exhaust other events which might qualify as "other proceed-

ings." See *United States v. Mentz,* 840 F.2d 315, 330 n. 31 (6th Cir.1988). Courts have excluded delays caused by pre-trial motions, trials, probation hearings, plea negotiations and sentencing. See *Henderson,* 476 U.S. 321, 106 S.Ct. 1871; *Montoya,* 827 F.2d 143; *United States v. Lopez–Espindola,* 632 F.2d 107 (9th Cir. 1980).

Generally, federal courts have excluded delay caused by proceedings in state courts. *United States v. Goodwin,* 612 F.2d 1103 (8th Cir.), *cert. denied* 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980). Federal district courts are not considered states, at least under the Interstate Agreement on Detainers Act. See *United States v. Stoner,* 799 F.2d 1253 (9th Cir.), *cert. denied* 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 729 (1986). However, delay has been excluded where the defendant is held by a federal court in another district. *Montoya,* 827 F.2d 143; *Shear,* 825 F.2d 783; *United States v. Allsup,* 573 F.2d 1141 (9th Cir.1978); Annot., 46 A.L.R.Fed. 349 (1980).

In the instant case defendant was held in the geographic area of the Eastern District of Kentucky, albeit while under the jurisdiction of the Southern District of Ohio while awaiting sentencing. While he conceivably could have been indicted, the Government is not required to establish a causal connection between the delay and the other proceeding or that the delay was reasonable. We agree that to require the Government to establish a causal relationship between another proceeding and its delay in indicting the defendant would place an unnecessary burden on the Government. See *Montoya,* 827 F.2d 143, see also n. 9 for additional citations. The exclusion is automatic if it falls within one of the exceptions. *Henderson,* 476 U.S. 321, 106 S.Ct. 1871; *Shear,* 825 F.2d 783; *United States v. Velasquez,* 802 F.2d 104 (4th Cir.1986); *United States v. Novak,* 715 F.2d 810 (3rd Cir.1983); *United States v. Robertson,* 810 F.2d 254 (D.C.Cir.1986).

In support of the above holdings, we quote liberally from the following.

In *Henderson,* 476 U.S. at 326, 330, 106 S.Ct. at 1874, 1876 the Supreme Court said the following:

> On its face, subsection (F) excludes "[a]ny period of delay" caused by "any pretrial motion," "from the filing of the motion through the conclusion of the hearing." The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not. Moreover, subsection (F) does not require that a period of delay be "reasonable" to be excluded, although Congress clearly knew how to limit an exclusion: in § 3161(h)(7), Congress provided for exclusion of a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Apart from this single instance, every other provision in § 3161(h) provides for exclusion of "any period of delay." The provision excludes, for example, all of the time consumed by an interlocutory appeal, § 3161(h)(1)(E), by a competency examination, § 3161(h)(1)(A), and by the defendant's unavailability, § 3161(h)(3)(A). As the Court of Appeals concluded: "The difference between (7) and (1) through (6) is a strong indication that exclusion of the periods defined in (1)–(6) was intended to be automatic." 746 F.2d, at 622.

> · · · · ·

> We instead hold that Congress intended subsection (F) to exclude from the Speedy Trial Act's 70–day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is "reasonably necessary."

While *Henderson* dealt with § 3161(h)(1)(F), the Court in *Shear,* where the facts were somewhat analogous to the case sub judice,[4] found that similar reasoning should be applied to the application of § 3161(h)(1)(D). In that case, on motion to dismiss, the trial court held that the period of delay between Shear's arrest and his West Virginia indictment was excludable under 3161(h)(1)(D) as a delay resulting from trial with respect to other charges.

The defendant in *Shear* argued, as does the defendant here that the other proceedings did not actually cause any delay in his indictment. The Court in denying that argument stated that actual causation was not required before excluding delay. The Court citing *Henderson* stated that:

> That interpretation of the Act was, however, soundly rejected in a slightly different context by this Court in *United States v. Velasquez,* 802 F.2d 104 (4th Cir.1986). In *Velasquez,* we held that actual causation was not required before excluding delay "resulting from any pretrial motion" pursuant to § 3161(h)(1)(F). Instead, we concluded that the time between the filing and the disposition of the pretrial motions was automatically excluded.

> Our conclusion in *Velasquez* relied substantially upon the Supreme Court's decision in *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). In *Henderson,* the Court refused to limit excludable time under § 3161(h)(1)(F) to delays "reasonably necessary." The Court reasoned that the exclusion for "any period of delay" provided in § 3161(h)(1)(F) was intended by Congress to be both broad and "automatic" in its operation. The court, thereby, distinguished § 3161(h)(1)(F) from other provisions of the Act, such as § 3161(h)(7), where Congress expressly provided for consideration of the factual circumstances surrounding the delay. 106 S.Ct. at 1875.

> · · · · ·

**4.** In *Shear,* the defendant was arrested on August 25, 1985 in West Virginia on a warrant based on a federal indictment for counterfeiting in the District of New Jersey. *Id.* at 784. That same day, a complaint was filed against the defendant in the Northern District of West Virginia for similar offenses. *Id.* A detention hearing was held on August 28, 1985 on the New Jersey charges before a United States Magistrate who ordered that the defendant be removed to New Jersey for trial. *Id.* at 785. The defendant was convicted on January 29, 1986 and sentenced on March 10, 1986 on the New Jersey charges. Not until March 21, 1986 was the defendant indicted on the West Virginia charges.

The statutory language in §§ 3161(h)(1)(D) and (h)(1)(F) is virtually identical. Both provisions clearly allow exclusions of "any period of delay resulting from other proceedings." It is patently unreasonable to suggest that Congress intended the phrase "resulting from" to have two dramatically different meanings within the same statutory subsection. Moreover, appellant ignores the persuasive *dicta* from *Henderson* in which the Supreme Court suggested that all of the exclusions in §§ 3161(h)(1)(6) were "intended to be automatic." *Id.*

[1] We conclude that our reasoning in *Velasquez* with regard to the proper interpretation of § 3161(h)(1)(F) applies with equal force to the operation of § 3161(h)(1)(D).

*Shear,* 825 F.2d at 786.

For the foregoing reasons, we find that the time after defendant's arrest up to and including sentencing is excludable, that the defendant was timely indicted and that defendant's second issue is not well taken.

The judgment of conviction on Count I is VACATED and the case is REMANDED to the district court for a new trial on Count I.

RYAN, Circuit Judge, dissenting.

My brothers' conclusion that the district court's error in advising the jury that the defendant admitted all of the elements of the crime charged in Count II of the indictment was not harmless beyond a reasonable doubt because it may have tainted the jurors' verdict on Count I necessarily presupposes that the jurors either ignored or disobeyed the court's instructions, or were otherwise unwilling or unable to apply them. I have no doubt that there are some cases in which a trial court's instructional error directly affecting only one of several counts charged in an indictment will, because of the facts of the case, inevitably taint the jurors' consideration of the other counts, despite the court's correct instructions as to those counts. However, in my judgment, this is not such a case. Consequently, I must respectfully dissent from the court's conclusion that the jury's guilty

verdict as to Count I of the indictment must be vacated.

The intimidation offense alleged in Count I occurred on September 30, 1986, and the bribery offense charged in Count II eight days later on October 8, 1986. The trial court's clear, simple, direct, and understandable instructions to the jury explained that it was only as to the October 8 bribery offense that the defendant was claiming the defense of entrapment and that "in doing so" the defendant admitted "with respect to Count II ... that he committed the offense that is alleged in Count II." Referring four separate times to "Count II," the court instructed the jury as to the specific elements the defendant was admitting:

> Now, with respect to Count Two, as I told you previously, the defendant relies upon a defense of entrapment. In doing so, he concedes or admits or stipulates that he committed the offense that is alleged in Count Two, thus, he admits that David Geoghegan was to be a witness under oath at the trial of United States versus Robinson, number 186–0074, in the Southern District of Ohio. Second, that the defendant corruptly offered and gave something of value to Geoghegan. And, third, he admits that he acted with intent to influence Geoghegan's testimony. Although admitting these elements of the offense, the defendant contends, however, that he is not guilty of the offense that is charged in Count Two of the indictment because of entrapment. Thus, the only issue for your consideration with respect to Count Two is the entrapment issue. That is whether the defendant was entrapped as to committing the offense that is charged there.

Earlier in its instructions, the court had told the jurors that it was their oath bound duty to consider "[e]ach charge and the evidence pertaining to it separately," and that the government had the burden of proving "each count by proof beyond a reasonable doubt." Immediately thereafter, the court instructed the jurors "what facts or elements" the government was obligated to prove beyond a reasonable

doubt with respect to "the offense that is charged in Count I...." Thus, the court treated the two offenses charged in the indictment separately; and understandably so, since they charged distinctly different offenses, albeit with two common elements, that had occurred approximately a week apart and described wholly different activity. The court, carefully, explicitly, and articulately, advised the jury that the defendant's admissions related only to the October 8 offense charged in Count II, to which he was offering the entrapment defense.

I can find nothing in the evidence, the arguments of counsel, or the court's jury instructions that would explain the conclusion reached in the majority opinion, albeit inferentially, that the jurors were incapable or unwilling to follow those instructions, or ignored or disobeyed them. No one at trial suggested to the jury, in argument or otherwise, that the defendant's concession of guilt of the October 8 offense charged in Count II was an admission of any of the elements of the offense that occurred eight days earlier as charged in Count I.

If there had been any evidence in the case contradicting the government's proofs that on September 30, 1986 Robinson knew that Geoghegan was scheduled to be a witness against him and that his statements to Geoghegan on that date were for the purpose of influencing Geoghegan's later testimony, there might have been some risk that the jurors would have been tempted to resolve such conflict by relying upon the defendant's admissions concerning the October 8 offense. But there was no conflict in the evidence on those two elements of Count I and thus no temptation for the jurors to ignore the court's instructions to evaluate the two counts separately.

The majority opinion relies in part upon the decision of the Third Circuit in *United States v. Berkery*, 865 F.2d 587 (3d Cir. 1989). However, even a cursory examination of *Berkery* reveals that the case is clearly distinguishable. The issue resolved by the majority opinion in this case, that results in vacating the defendant's conviction on Count I, turns on its facts, and the *Berkery* facts are very different than those

presented in this case. In *Berkery*, the defendant was charged with narcotics offenses in a fifteen-count indictment. In Count I of the indictment, the defendant was accused of conspiring to possess and distribute a controlled substance, P2P, from 1980 to 1982. In Counts II through X, he was accused of the substantive offense of possessing with intent to distribute the same drug, and in Counts XII through XV with distributing a different controlled substance. *Id.* at 588. The erroneous entrapment instruction given in this case was also given in *Berkery*. There the jury was told that Berkery admitted all of the elements of the conspiracy charge in the first count, which alleged a conspiracy from 1980 to 1982 to distribute and possess with intent to distribute the very drug Berkery was charged with possessing with intent to distribute in the substantive counts, II through X. *Id.* The court stated:

> In view of the fact that the substantive charges in counts 2–14 are for possession with intent to distribute and distribution which occurred *pursuant to and during the time frame set forth in the conspiracy alleged in count 1*, they are closely intertwined with the offense of count 1, conspiracy to possess with intent to distribute and conspiracy to distribute. We can readily see that a jury could have used the above-quoted admission to convict Berkery of counts 2–14.

*Id.* at 591. (Emphasis added.)

Plainly, that is not this case. In *Berkery*, the admitted conspiracy covered the same time period as did all of the offenses charged in the substantive counts and amounted to an admission that the defendant conspired with another to do what he was charged with doing in the substantive counts. Obviously there was a "spill over" on those facts. But the facts of this case are not those facts and, indeed, are not close. Here, the defendant, in admitting the events that occurred on October 8, 1986, admitted nothing about the events which were alleged to have occurred a week earlier on September 30, 1986.

Respectfully, I can find no basis in the record for concluding that the jury in this case would not, did not, or could not follow the court's instructions to consider these different offenses separately, and to confine their consideration of the admitted facts to the October 8 offense only, as they were told to do.

The evidence in support of the defendant's guilt of the offense charged in Count I is uncontradicted and overwhelming. Any risk that the jury "may have seized" upon the defendant's admissions to the elements of Count II in order to convict him of Count I is, in my judgment, mere speculation and entirely unsupported in the record.

I would affirm the judgment of conviction.